**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

FILED

JUL - 2 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| MARK ANTHONY ORTEGA<br>Plaintiff,<br>v.<br><br>BROOKESTONE FUNDING INC., a New York<br>corporation; ISAAC QUBRUSI, an individual;<br>and JOHN DOES 1 through 8,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

Case No. _____

**SA26CA4215**
**OG**

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

1. This action seeks statutory damages to stop Defendant Brookestone Funding Inc. ("Brookestone" or "Defendant"), which markets itself under the trade name "Brookestone Funding," from placing and directing unsolicited and unlawful telemarketing text messages to Plaintiff Mark Anthony Ortega ("Plaintiff") to sell him business loans, lines of credit, and merchant cash advances. The messages violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), and the Texas Business and Commerce Code, Chapters 302 and 305.

2. Despite the fact that Plaintiff's telephone number has been registered on the National Do Not Call Registry for more than fourteen years, Defendant, itself and through third-party lead-generation vendors and personnel texting on its behalf and for its benefit, directed an anonymous telemarketing campaign at Plaintiff from at least eight rotating telephone numbers over a period of more than a year. Several of the messages identified no sender at all, and not one identified, at the outset, the entity on whose behalf it was sent. When Plaintiff asked who was texting him, the senders identified themselves only by Defendant's name, including "this is Randy with Brookestone," "Joe from Brookestone," "Mason with Brookestone," and "kevin pacheco with brookestonefunding."

3.      Defendant's conduct has caused Plaintiff harm, including the invasion of his privacy, aggravation, annoyance, depletion of his phone battery and time.

## BACKGROUND ON THE TCPA

4.      Enacted in 1991 with bipartisan support, the TCPA aims to protect consumers from the nuisance and invasion of privacy caused by unsolicited telemarketing calls, reflecting Congress's recognition of such calls as a "scourge of modern civilization." See 137 Cong. Rec. 30821 (1991).

5.      Decades later, the TCPA remains a crucial safeguard against the ever-increasing volume of unwanted calls, which consistently rank among the top consumer complaints. See Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015). The TCPA remains a vital tool for combating these abuses, and its private right of action is essential to empower individuals to hold violators accountable.

6.      The TCPA strictly forbids telephone solicitations to numbers listed on the National Do Not Call Registry, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), and requires every person or entity engaged in telemarketing to institute minimum internal do-not-call procedures before initiating any telemarketing call. 47 C.F.R. § 64.1200(d). These provisions are designed to protect consumers from the unique harms associated with these types of intrusive calls, including wasted time, invasion of privacy, and the potential for economic loss.

7.      The TCPA also makes it unlawful to make any call, including a text message, to a telephone number assigned to a cellular telephone service using an automatic telephone dialing system or an artificial or prerecorded voice, absent an emergency or the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). A text message to a cellular telephone is a "call" within the meaning of the TCPA.

8.     A seller cannot avoid TCPA liability by outsourcing its telemarketing to third parties. The TCPA's private right of action expressly reaches calls made "by or on behalf of the same entity," 47 U.S.C. § 227(c)(5), and the Federal Communications Commission has confirmed that sellers may be held vicariously liable for telemarketing violations committed by third-party marketers under federal common-law agency principles, including actual authority, apparent authority, and ratification. In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd 6574, 6584 (2013).

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA). As this action involves alleged violations of the TCPA, a federal question is presented, thus conferring jurisdiction upon this Court.

10.     Additionally, this Court has supplemental jurisdiction over the claims arising under Tex. Bus. & Com. Code § 302 and § 305. While the Texas Business and Commerce Code, Chapter 302 and 305, is a state law, it complements and supplements the federal TCPA by providing additional protections to Texas residents against unwanted telemarketing calls. Under 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction over state law claims that are so related to claims within the court's original jurisdiction that they form part of the same case or controversy.

11.     In this instance, the claims under the Tex. Bus. & Com. Code § 302 and § 305, are intertwined with the TCPA claims, as they both arise from the same set of facts involving the

Defendant's telemarketing calls to Plaintiff. The legal issues and factual questions involved in both sets of claims are closely related, and it would be efficient and convenient for the Court to address them together in a single proceeding. Therefore, the Court's supplemental jurisdiction is appropriate to encompass the claims arising under Tex. Bus. & Com. Code § 302 and § 305.

12.     This Court has personal jurisdiction over Defendants because each Defendant, itself or himself and through agents acting on its or his behalf, purposefully directed its unlawful telemarketing activities at Texas and specifically at Plaintiff, who resides in this district, by transmitting telemarketing text messages to a Texas telephone number. By soliciting business from Texas residents, Defendants purposefully availed themselves of the privilege of conducting activities within the State of Texas.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred within this district.

## PARTIES

14.     Plaintiff Mark Anthony Ortega is a natural person who resided in San Antonio, Bexar County, Texas at all times relevant hereto.

15.     Defendant Brookestone Funding Inc. is a New York corporation with its registered office at 2002 Coney Island Avenue, Brooklyn, New York 11223. Defendant may be served with process through the New York Secretary of State as its statutory agent for service of process, or wherever it may be found.

16.     Defendant Isaac Qubrusi is a natural person who, on information and belief, resides in the State of New Jersey and may be served at 14 Saxony Drive, Oakhurst, New Jersey 07755, or wherever he may be found.

4

17.     Defendants John Does 1 through 8 are individuals or entities whose true names and capacities are presently unknown to Plaintiff, including the lead-generation vendors, texting platforms, and individual senders who initiated, transmitted, or directed the telemarketing text messages described herein on behalf of Brookestone. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained, including through third-party subpoenas.

18.     Each Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

## FACTUAL BACKGROUND

19.     On or about January 23, 2012, Plaintiff registered his cellular telephone number, 210-744-9663 ("Plaintiff's Number"), with the National Do Not Call Registry. Plaintiff has never de-listed this number.

20.     Plaintiff is, and has been at all times relevant to this action, the regular and sole user of Plaintiff's Number.

21.     Plaintiff uses his cellular phone primarily for personal, residential, and household purposes.

22.     Plaintiff is the individual subscriber of the telephone number, the account is registered in Plaintiff's personal name, and Plaintiff pays his cellular telephone bill using his own personal funds and is not reimbursed by corporate funds.

23.     Plaintiff uses this telephone line daily to communicate with family members, friends, and personal medical providers.

24.     Plaintiff's Number is designated for residential use, as it is assigned to a consumer telephone exchange service and is not assigned to a telephone exchange service designated for business use.

25. Plaintiff's Number is registered and billed in Plaintiff's individual name; and it is paid for with Plaintiff's personal funds.

26. Plaintiff has never had any prior business relationship with Defendants, has never been a customer, has never inquired about Defendants' products or services prior to receiving the messages described below, and has never granted prior express invitation, permission, or written consent to Defendants or any entity acting on their behalf to receive telemarketing calls or text messages.

27. "Brookestone" and "Brookestone Funding" are names used by Defendant Brookestone Funding Inc., a New York corporation engaged in the business of marketing and brokering loans, merchant cash advances, and lines of credit. Defendant operates the website brookestonefunding.com and publishes the telephone number (212) 258-0602. Defendant's own privacy policy states that Defendant "may use your information to market products or services to you through various mediums, such as calls, text messages, email, and mail," and that Defendant collects information "through ... public records and third-party information services," confirming that Defendant markets by text message and obtains consumer contact information from third-party lead sources.

28. On Monday, March 10, 2025, at 12:04 PM, Plaintiff received a telemarketing text message from telephone number (929) 816-7188. The verbatim content was: "Hey Good Morning, Hope all is well. Circling back on your inquiry - are you still in the market for capital? We have funds allocated ready to go out today - Reply with your ideal funding amount and term and I'll make it happen." The message did not identify the individual sending it, the entity on whose behalf it was sent, or any street address or telephone number at which the seller could be contacted. Plaintiff replied, "Who is this?," and received no response identifying the sender.

29. On Monday, March 10, 2025, at 3:57 PM, Plaintiff received a telemarketing text message from a different telephone number, (915) 900-7783. The verbatim content was: "Hey, Hope all is well. Could your business use a loc or additional working capital to support your expansion plans? I have 1.6M left to fund this week - Reply with your ideal funding amount and term and I'll make it happen. Reply "Q" to Opt-out." Again, the message did not identify the individual sender, the seller, or any address or telephone number for the seller.

30. On Monday, April 21, 2025, at 11:03 AM, Plaintiff received a telemarketing text message from telephone number (540) 517-7622. The verbatim content was: "Hi, Hope all is well. With volatility and market uncertainty ahead - capital access matters more than ever. Reply with your ideal amount and term and I'll get it done. Reply "Q" to Opt-out." After Plaintiff asked who was texting him, the sender replied, "My name is kevin pacheco with brookestonefunding," and asked, "Are you interested in acquiring working capital?" The message provided no street address or telephone number at which the seller could be contacted.

31. On Tuesday, April 7, 2026, at 12:47 PM, Plaintiff received a telemarketing text message from telephone number (929) 556-6273. The verbatim content was: "Hey, Hope all is well. Still in the market for business expansion funds? Let me know the amount to qualify. Reply STOP or No to opt-out." In response to Plaintiff's questions, the sender stated, "Hi - this is Randy with a direct lender," then "Hi - this is Randy with Brookestone," and, after Plaintiff asked for a website, "Hi Mark - this is Randy with Brookestone a direct lender for business growth. Are you still interested in funding? If so, what's the best email to send the quick 3-minute application so we can get you started?" The sender never provided a website, a street address, or a telephone number for the seller.

7

32.     On Wednesday, April 15, 2026, at 8:56 AM, Plaintiff received a telemarketing text message from telephone number (929) 600-6560. The verbatim content was: "Hey, Hope all is well. We have revolving LOC facilities available this week. Let me know the amount to qualify. Reply STOP or No to opt-out." The message did not identify the individual sender, the seller, or any address or telephone number for the seller.

33.     On Wednesday, April 29, 2026, at 8:49 AM, Plaintiff received a telemarketing text message from telephone number (330) 822-6920. The verbatim content was: "Hope all is well. Haven't heard back - are you still in the market for business capital? Let me know the amount? Reply STOP or no to opt-out." The message did not identify the individual sender, the seller, or any address or telephone number for the seller.

34.     On Monday, May 11, 2026, at 8:16 AM, Plaintiff received a telemarketing text message from telephone number (330) 525-1776. The verbatim content was: "Hey, Hope all is well. We have new options for business funding this week - What amount are you considering? Reply STOP or No to opt-out." When Plaintiff asked who was texting and which company, the sender replied, "Joe from Brookestone, we are direct lenders partnered with a private bank." When Plaintiff asked for a website, the sender provided none.

35.     On Monday, June 29, 2026, at 8:35 AM, Plaintiff received a telemarketing text message from telephone number (725) 308-3653. The verbatim content was: "You asked about business funding - What amount could your business use? Reply with a ballpark or STOP to opt out." When Plaintiff asked what company was contacting him, the sender replied, "Mason with Brookestone, Reply with your ideal funding amount and term and I'll make it happen."

36. Each of these messages solicited Plaintiff to purchase loan products, merchant cash advances, loans, and lines of credit, and encouraged Plaintiff to respond for the purpose of entering a loan transaction.

37. Plaintiff repeatedly attempted to opt out and to stop the messages. In response to the April 21, 2025 message, Plaintiff replied "Whose this," "Revoke," and "quit," and received an automated reply stating, "You have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe." Despite that confirmation, Defendant continued to send telemarketing text messages to Plaintiff from other telephone numbers.

38. On June 29, 2026, in response to the message from (725) 308-3653, Plaintiff made a written demand for Defendant's do-not-call policy and to be placed on Defendant's do-not-call list, replying: "Please provide me a copy of your do not call list policy (mortega@utexas.edu) and add me to your do not call list. I am not interested and on both the Texas and federal do not call lists." Neither Defendant nor anyone acting on its behalf produced a written do-not-call policy in response to Plaintiff's demand. To date, Defendant has produced no written do-not-call policy.

39. Plaintiff conducted carrier lookups on the originating telephone numbers. Each of the originating numbers is a non-fixed Voice over Internet Protocol (VoIP) number rather than a standard wireless or landline number, including numbers carried by Twilio, by Google Voice, and by Onvoy/Sinch. Non-fixed VoIP numbers of this kind can be acquired, used, and discarded in bulk and programmatically.

40. The automated nature of the telemarketing campaign directed at Plaintiff is evidenced by the use of at least eight rotating originating telephone numbers over a period of more than a year, the transmission of nearly identical, generic scripts from different numbers, the recurring "Reply STOP" and "Reply "Q" to Opt-out" boilerplate appended to the messages, and

9

the automated unsubscribe confirmation Plaintiff received, all of which are hallmarks of pre-scheduled mass-texting software and automatic dialing equipment rather than manual, individualized human communication. On information and belief, the rotation of originating numbers was designed to evade carrier spam filtering and do-not-call enforcement.

41.    At all relevant times, Defendant was on actual notice that its telemarketing violated the TCPA. Brookestone was named as the defendant in a putative class action alleging similar TCPA violations, Ehde v. Brookestone Funding, Inc., No. 1:24-cv-06676 (E.D.N.Y.), in which Brookestone admitted that it purchases consumer leads and contacts the persons identified as prospects. Brookestone and its owner Isaac Qubrusi were also sued for similar TCPA violations in Dobronski v. Brookestone Funding, Inc., No. 2:25-cv-10537 (E.D. Mich.). Brookestone is further the subject of consumer complaints and reviews submitted to the Better Business Bureau in December 2025, February 2026, and April 2026, each reporting the same pattern of repeated, unsolicited calls and texts to persons who never inquired and whose removal requests were ignored. Despite this notice, Defendant continued its telemarketing campaign against Plaintiff through at least June 29, 2026.

42.    On information and belief, Defendant Isaac Qubrusi is the incorporator and owner of Brookestone and personally authorizes, directs, and participates in Brookestone's telemarketing operations, including the hiring and direction of the personnel and lead-generation vendors who send Brookestone's telemarketing text messages. As reflected in the court records in Dobronski, Qubrusi identified himself as the owner of Brookestone, stated that he maintains a team that places telemarketing calls daily using automated dialing equipment, and, when asked for Brookestone's written do-not-call policy, responded "What's that?," and when asked to place a number on Brookestone's do-not-call list, responded "Why would I want to do that?"

## AGENCY AND VICARIOUS LIABILITY

43.     The telemarketing text messages described above were sent either by Brookestone's own personnel or by one or more third-party lead-generation vendors retained, directed, and paid by Brookestone to generate loan leads and appointments for Brookestone's sales team. The identities of those senders and vendors are known to Defendants and will be confirmed in discovery.

44.     Actual authority: Defendant admits, including through its own privacy policy and its filings in other litigation, that it markets by text message and purchases consumer leads from third-party sources. On information and belief, Defendant engaged its personnel and vendors for the specific purpose of soliciting consumers by text message; supplied or approved the campaign parameters, including the loan products, dollar amounts, and pricing terms offered in the messages; and compensated them for responsive leads and appointments. Telemarketing performed at a seller's request, subject to its direction, and for its benefit is performed with the seller's actual authority.

45.     Apparent authority: The senders held themselves out to Plaintiff as "Brookestone," "Brookestone Funding," and "brookestonefunding," and solicited Plaintiff to obtain funding under Brookestone's loan programs. A reasonable consumer would understand, and Plaintiff did understand, the messages to come from Defendant. On information and belief, Defendant authorized its personnel and vendors to use its name in their solicitations, or knowingly permitted them to do so.

46.     Ratification: Defendant knowingly accepted the benefits of the texting campaign, including leads, appointments, and customers, while failing to inquire into, supervise, or correct the practices of those texting on its behalf. Even after being sued for the same conduct in Ehde and

11

Dobronski, after receiving consumer complaints, and after Plaintiff's repeated opt-out requests and written do-not-call demand, Defendant did not stop the campaign, identify its vendors, produce a do-not-call policy, or take any corrective action. A seller that accepts the benefits of unlawful telemarketing with knowledge of the material facts, or that willfully ignores those facts, ratifies the conduct of those acting on its behalf.

47.    Defendant Qubrusi is personally liable because he authorized, directed, and participated in the telemarketing that violated the TCPA. A corporate officer who directly participates in or personally authorizes unlawful telemarketing is individually liable under the TCPA and may not use the corporate form to shield that participation.

48.    Accordingly, Brookestone is directly liable for any messages initiated by its own personnel and is vicariously liable, under principles of actual authority, apparent authority, and ratification, for the messages its lead-generation vendors initiated on its behalf; and Defendant Qubrusi is individually liable for the messages he authorized, directed, and participated in.

49.    The unauthorized telemarketing text messages that Plaintiff received from Defendants and their agents have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

50.    In response to these messages, Plaintiff brings forward this case seeking an award of statutory and actual damages and costs.

**COUNT I**
**Violation of the Telephone Consumer Protection Act**
**Automated Telemarketing Text Messages to a Cellular Telephone Number**
**(47 U.S.C. § 227(b)(1)(A)(iii))**

51.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 50.

52.    The TCPA prohibits any person from making any call, including a text message, using an automatic telephone dialing system or an artificial or prerecorded voice, to any telephone number assigned to a cellular telephone service, absent an emergency or the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

53.    Each of the at least eight text messages described above was a "call" to a number assigned to a cellular telephone service, namely Plaintiff's Number.

54.    On information and belief, Defendant and those acting on its behalf transmitted the messages using an automatic telephone dialing system or comparable automated mass-texting equipment having the capacity to store or produce telephone numbers and to dial or transmit messages to them automatically. The automated character of the campaign is shown by the rotation of at least eight non-fixed VoIP numbers, the transmission of nearly identical, generic scripts from different numbers, the automated opt-out boilerplate, and the automated unsubscribe confirmation Plaintiff received.

55.    Defendant did not have Plaintiff's prior express consent, and did not have his prior express written consent, to send marketing text messages to Plaintiff's Number, and no emergency purpose existed.

56.    Defendant's violations were willful and knowing. Defendant deployed automated equipment to blast solicitations to a number for which it had confirmed no consent to text, and continued after Plaintiff's opt-out requests and the automated unsubscribe confirmation.

57.    As a direct and proximate result of Defendant's violations, Plaintiff is entitled to statutory damages of up to $500 for each text message that violated the TCPA, and, because the violations were willful and knowing, the Court may treble the damages to up to $1,500 for each violation.

## COUNT II
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2))

58.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 50.

59.    The TCPA prohibits any person or entity from initiating any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). These prohibitions apply to text messages sent to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

60.    At all relevant times mentioned herein, Plaintiff's cellular telephone number, (210) 744-9663, was and remains registered on the National Do-Not-Call Registry. Plaintiff's number had been on the Registry continuously since January 23, 2012, for more than 31 days prior to each of the messages at issue.

61.    Defendant, in violation of 47 U.S.C. § 227(c), itself or through personnel and lead-generation vendors acting on its behalf, initiated, or caused to be initiated, more than one telephone solicitation, and at least eight telephone solicitations, to Plaintiff's registered telephone number within a single 12-month period, each for the purpose of encouraging the purchase of Defendant's loan products and services. The TCPA provides a private right of action to any person who has received "more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the regulations prescribed under § 227(c). 47 U.S.C. § 227(c)(5).

62.    Defendant did not have Plaintiff's prior express invitation or permission, nor his written consent, nor did it have an established business relationship with Plaintiff that would exempt the messages from the TCPA's prohibitions.

14

63.     These violations were willful and knowing. Defendant and its agents transmitted anonymous solicitations from rotating telephone numbers, a practice designed to evade do-not-call screening and enforcement, to a number that has been registered on the National Do-Not-Call Registry for more than fourteen years, and Defendant continued even after prior lawsuits, consumer complaints, and Plaintiff's own opt-out requests placed it on notice.

64.     As a direct and proximate result of Defendant's violations, Plaintiff is entitled to statutory damages of up to $500 for each call that violated the TCPA. Furthermore, because Defendant's violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award, treble damages up to $1,500 for each violation.

### COUNT III
### Violation of the Telephone Consumer Protection Act
### Failure to Institute Mandatory Internal Do-Not-Call Procedures
### (47 C.F.R. § 64.1200(d); 47 U.S.C. § 227(c)(5))

65.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 50.

66.     The TCPA and its accompanying regulations impose an affirmative obligation upon entities engaged in telemarketing to institute specific procedures before making any telemarketing calls. Specifically, 47 C.F.R. § 64.1200(d) dictates that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." These requirements apply to text messages sent to wireless numbers. 47 C.F.R. § 64.1200(e).

67.     These mandatory minimum procedures require the telemarketer to have a written policy available upon demand (47 C.F.R. § 64.1200(d)(1)), to train its personnel engaged in telemarketing on the existence and use of the do-not-call list (47 C.F.R. § 64.1200(d)(2)), to record

consumer opt-out requests (47 C.F.R. § 64.1200(d)(3)), to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted (47 C.F.R. § 64.1200(d)(4)), and to maintain a record of do-not-call requests, which must be honored for five years (47 C.F.R. § 64.1200(d)(6)).

68.    Defendant, itself or through personnel and vendors texting on its behalf, initiated telemarketing text messages to Plaintiff, a residential telephone subscriber, without having instituted these mandatory minimum procedures. The absence of such procedures is evident from the campaign itself: the messages were sent anonymously from at least eight rotating telephone numbers; several identified no sender at all, and none identified any contact address or telephone number for the seller; Defendant ignored Plaintiff's opt-out requests and continued texting from other numbers; and Defendant failed to produce a written do-not-call policy upon Plaintiff's written demand. Under 47 C.F.R. § 64.1200(d)(3), where do-not-call requests are "recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request."

69.    Because Defendant failed to institute these mandatory minimum procedures prior to initiating the telemarketing campaign, every text message Defendant or its agents sent to Plaintiff constitutes a separate violation of 47 C.F.R. § 64.1200(d).

70.    These violations were willful and knowing, as shown by the anonymous, rotating-number design of the campaign and by Defendant's continued texting after opt-out requests and a written demand.

71.    As a direct and proximate result of Defendant's violations, Plaintiff is entitled to statutory damages of up to $500 for each call that violated the TCPA. Furthermore, because Defendant's violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award, treble damages up to $1,500 for each violation.

## COUNT IV
### Violation of the Telephone Consumer Protection Act
### Failure to Maintain a Written Do-Not-Call Policy Available Upon Demand
### (47 C.F.R. § 64.1200(d)(1); 47 U.S.C. § 227(c)(5))

72.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 50.

73.    47 C.F.R. § 64.1200(d)(1) requires that any person or entity making calls for telemarketing purposes "must have a written policy, available upon demand, for maintaining a do-not-call list."

74.    On June 29, 2026, Plaintiff made a written demand for Defendant's written do-not-call policy by replying directly to Defendant's solicitation: "Please provide me a copy of your do not call list policy (mortega@utexas.edu) and add me to your do not call list."

75.    Despite Plaintiff's demand, neither Defendant nor anyone acting on its behalf has produced a written do-not-call policy. On information and belief, no such written policy exists. Defendant's failure to maintain a written do-not-call policy available upon demand violates 47 C.F.R. § 64.1200(d)(1).

76.    This violation was willful and knowing, as evidenced by Defendant's silence in the face of a written demand and by a prior consumer's report that Defendant's representatives did not know what a do-not-call policy was.

17

77.     As a direct and proximate result of Defendant's violations, Plaintiff is entitled to statutory damages of up to $500 for each call that violated the TCPA. Furthermore, because Defendant's violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award, treble damages up to $1,500 for each violation.

**COUNT V**
**Violation of the Telephone Consumer Protection Act**
**Failure to Identify the Caller and Seller and Provide Contact Information**
**(47 C.F.R. § 64.1200(d)(4); 47 U.S.C. § 227(c)(5))**

78.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 50.

79.     47 C.F.R. § 64.1200(d)(4) requires that a person or entity making a call for telemarketing purposes "must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

80.     None of the eight telemarketing text messages sent to Plaintiff identified the individual sender at the outset; several identified no sender at all; none identified any telephone number or address at which the seller could be contacted; and the messages that named "Brookestone" did so only after Plaintiff affirmatively asked who was texting him, and even then provided no individual caller name and no telephone number or address for the seller.

81.     Each such message constitutes a separate violation of 47 C.F.R. § 64.1200(d)(4), actionable through the private right of action in 47 U.S.C. § 227(c)(5).

82.     These violations were willful and knowing. The anonymity of the messages was by design: the campaign used rotating, untraceable VoIP numbers and omitted identifying information precisely so that consumers like Plaintiff could not identify, contact, or demand do-not-call compliance from the seller.

18

83.    As a direct and proximate result of Defendant's violations, Plaintiff is entitled to statutory damages of up to $500 for each call that violated the TCPA. Furthermore, because Defendant's violations were willful and knowing, Plaintiff is entitled to, and the Court has the discretion to award, treble damages up to $1,500 for each violation.

**COUNT VI**
**Violations of the Texas Business and Commerce Code**
**Telephone Solicitation Without a Registration Certificate**
**(Tex. Bus. & Com. Code § 302.101)**

84.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 50.

85.    Defendant, itself and through agents acting on its behalf, engaged in "telephone solicitation" as defined by Tex. Bus. & Com. Code § 302.001(7), which expressly includes "a transmission of a text or graphic message." Furthermore, pursuant to § 302.002, Defendant "made" a telephone solicitation at the exact moment it or its agents initiated the automated text messages to Plaintiff.

86.    Tex. Bus. & Com. Code § 302.101 provides that a seller "may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Registration is made with the Texas Secretary of State.

87.    A diligent search of the Texas Secretary of State's publicly available telemarketer database, conducted by Plaintiff on June 29, 2026, confirmed that Defendant holds no registration certificate and is not registered as a telephone solicitor in Texas. (https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp)

88.    Pursuant to Tex. Bus. & Com. Code § 302.303, Defendant's failure to hold a registration certificate prior to making telephone solicitations constitutes a "false, misleading, or

deceptive act or practice" actionable under Subchapter E, Chapter 17 of the Texas Business and Commerce Code.

89.     Defendant's failure to register before placing telemarketing messages to Plaintiff constitutes multiple, separate violations of this chapter. Section 302.302(a) of the Texas Business and Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation.

90.     Furthermore, § 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney fees.

**COUNT VII**
**Violation of the Texas Business and Commerce Code**
**Failure to Disclose the Seller's Street Address During a Solicitation**
**(Tex. Bus. & Com. Code § 302.202)**

91.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 50.

92.     Tex. Bus. & Com. Code § 302.202(1) strictly mandates that when a telephone solicitation is made, the seller shall provide the purchaser with "the complete street address of the location from which the salesperson is calling the purchaser" and, if different, "the complete street address of the seller's principal location." The statute imposes a conjunctive temporal requirement, stating this disclosure must be made "when a telephone solicitation is made and before consummation of any sales transaction."

93.     Because Defendant's telemarketing solicitations consisted entirely of text messages, Defendant was required by law to include its complete physical street address within the body of the text messages. Defendant and its agents completely failed to include any street

address in any of the eight telemarketing text messages sent to Plaintiff. This failure constitutes multiple, separate violations of Tex. Bus. & Com. Code § 302.202.

94.     Pursuant to Tex. Bus. & Com. Code § 302.303, Defendant's failure to disclose its physical street address constitutes a "false, misleading, or deceptive act or practice" actionable under Subchapter E, Chapter 17 of the Texas Business and Commerce Code.

95.     Furthermore, § 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney fees.

## COUNT VIII
### Violation of the Texas Business and Commerce Code
### (Tex. Bus. & Com. Code § 305.053)

96.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 50.

97.     Texas Business and Commerce Code § 305.053(a) explicitly provides a civil cause of action to any person who receives a communication that violates "47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A," against "the person who originates the communication." Defendant originated the communications at issue, itself and through agents acting on its behalf. As previously alleged, Plaintiff's telephone number has been registered on the national do-not-call registry since January 23, 2012.

98.     As alleged in detail in Counts I through V, Defendant violated 47 U.S.C. § 227 and the regulations adopted under it by sending automated text messages to Plaintiff's cellular number, by initiating multiple telephone solicitations to Plaintiff's number despite its registration on the National Do Not Call Registry, by failing to institute the mandatory internal do-not-call

procedures, by failing to maintain a written do-not-call policy available upon demand, and by failing to identify the caller and seller and provide contact information in its solicitations.

99.    Because Defendant's conduct violated 47 U.S.C. § 227 and the regulations adopted under that provision, Plaintiff is entitled to bring this separate cause of action for those same violations under Texas state law.

100.    Pursuant to Tex. Bus. & Com. Code § 305.053(b), Plaintiff is entitled to recover the greater of his actual damages or $500 for each and every violation.

101.    Furthermore, because Defendant's violations were committed knowingly or intentionally, as evidenced by the anonymous, rotating-number design of the campaign and Defendant's failure to take corrective action despite prior lawsuits, consumer complaints, and Plaintiff's opt-out requests and written demand, Plaintiff is entitled to an award of treble damages up to $1,500 for each violation, as permitted by Tex. Bus. & Com. Code § 305.053(c).

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief against Defendants:

A. For Defendant's violations of the TCPA, 47 U.S.C. § 227(b) (Count I), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendant's conduct was willful and knowing, thereby trebling the damages to $1,500.00 for each and every violation;

B. For Defendant's violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) (Count II), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendant's conduct was willful and knowing, thereby trebling the damages to $1,500.00 for each and every violation;

C. For Defendant's violations of the regulations prescribed under 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(d), (d)(1), and (d)(4) (Counts III, IV, and V), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendant's conduct was willful and knowing, thereby trebling the damages to $1,500.00 for each and every violation;

D. For Defendant's violations of the Texas Business & Commerce Code § 302.101 (Count VI), award Plaintiff statutory damages and civil penalties of up to $5,000.00 for each and every violation;

E. For Defendant's violations of the Texas Business & Commerce Code § 302.202 (Count VII), award Plaintiff civil penalties and/or statutory damages of up to $5,000.00 for each and every violation;

F. For Defendant's violations of the Texas Business & Commerce Code § 305.053 (Count VIII), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendant's conduct was knowing or intentional, thereby increasing the damages to $1,500.00 for each and every violation;

G. Award Plaintiff all reasonable witness fees, court costs, and other litigation expenses incurred by Plaintiff pursuant to Tex. Bus. & Com. Code § 302.302(d);

H. Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

I. Grant any other and further relief, both at law and in equity, that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, Mark Anthony Ortega, demands a jury trial in this case.

Dated: June 29, 2026.

Respectfully submitted,

Mark Anthony Ortega
Plaintiff, Pro Se
mortega@utexas.edu
PO Box 702099
San Antonio, TX 78270
(210) 744-9663